* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to the Workers' Compensation Act.
2. This case involves the consolidation of two claims, I.C. No. 264253 with an injury date of April 29, 2002, and I.C. No. 418313 with an injury date of January 8, 2004.
3. An employer and employee relationship existed between plaintiff and defendant-employer on April 29, 2002 and January 8, 2004.
4. Defendant-employer is a duly qualified self-insured and Compmanagement, Inc., is the Third Party Administrator of defendant-employer's workers' compensation claims.
5. Plaintiff's average weekly wage on April 29, 2002 was $511.60, yielding a compensation rate of $341.08. Plaintiff's average weekly wage on January 8, 2004 will be determined by calculation of a properly completed Form 22.
6. Defendant filed a Form 60 on June 21, 2002 with respect to the April 2002 injury. Plaintiff was paid temporary total disability for the period of June 7, 2002 to December 30, 2002 at a compensation rate of $341.08 per week.
7. Plaintiff returned to work for defendant-employer on December 31, 2002, at the same average weekly wage he was earning on April 29, 2002. (The parties' stipulation shows an incorrect return to work date of December 21, 2002.)
8. Plaintiff was out of work from March 29, 2004 to July 28, 2004. He returned to work for defendant-employer on July 29, 2004 at his prior average weekly wage. Plaintiff was laid off from his employment on or about August 30, 2004, along with numerous other Broyhill employees.
9. The parties stipulated into evidence the following:
a. Documents from O2CVS867, Moore v. Baumgart.
b. Packet of medical records and reports.
c. Accident report from the Lenoir Police Department.
d. Recorded statement.
 e. Plaintiff's responses to defendant's discovery requests.
 f. Defendant's responses to plaintiff's discovery requests.
g. Attendance calendars.
 h. Packet of Industrial Commission forms submitted on February 16, 2005.
 i. Additional medical records submitted on June 21, 2005.
10. The Pre-Trial Agreement dated January 12, 2005, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 43 years old at the time of the Deputy Commissioner's hearing, completed the eleventh grade and subsequently obtained his GED. Plaintiff worked for defendant-employer from July 1987 until February 1995, from August 1998 until November 13, 2000, and from September 17, 2001 until August 27, 2004. Plaintiff was laid off on August 27, 2004, along with a number of other employees. During these periods of employment, plaintiff held various positions, including hardware attacher/touchup, glass packer, pre-assembler, minor finish repairer, major finish repairer and major case repairer.
2. On August 31, 1987, plaintiff sustained a compensable injury to his low back at work. Plaintiff was treated by Dr. McCloskey, a neurosurgeon, who performed surgery on January 21, 1988 to decompress and fuse the L5-S1 interspace. In January 1990, Dr. McCloskey gave plaintiff a 25% permanent partial impairment rating to his back, and permanent work restrictions of no lifting more than 30 pounds.
3. Plaintiff had episodes of back pain in subsequent years and was involved in motor vehicle accidents in February 1995, injuring his low back and neck, and in October 1999, injuring his neck. Following the second accident, Dr. McCloskey performed an anterior decompression and fusion of the C6-7 cervical interspace on February 29, 2000.
4. Although his medical treatment in 2000 concentrated on his cervical spine, plaintiff continued to experience some low back symptoms. In October 2000, plaintiff advised Dr. McCloskey that he was having spells where his legs felt weak and like they would give way. However, once released to return to work for his neck problem, plaintiff was able to perform his job as a master finish repairman, despite the underlying back symptoms.
5. On April 29, 2002, plaintiff sustained another compensable injury by accident when an entertainment center slipped out of a co-worker's hands and fell off the conveyor, striking plaintiff in the back. On May 21, 2002, plaintiff went to the hospital with complaints of low back pain radiating to his right thigh. On June 7, 2002, Dr. McCloskey examined plaintiff and noted abnormalities in the reflexes of his lower extremities. Dr. McCloskey treated plaintiff conservatively and, in July 2002, ordered a myelogram/CT scan. Diagnostic testing did not reveal a new structural abnormality and plaintiff's symptoms gradually improved with time and conservative treatment. Consequently, in September 2002, Dr. McCloskey referred plaintiff to Dr. Paul Lafavore for epidural steroid injections. Plaintiff only obtained temporary relief from the first injection, so Dr. Lafavore tried a facet injection at the second appointment. That injection failed to help plaintiff's symptoms and he did not return to Dr. Lafavore for follow-up treatment. Dr. McCloskey then sent plaintiff to Dr. Jeffrey Knapp at Hickory Orthopaedic Center for a second opinion.
6. On December 17, 2002, Dr. Knapp evaluated plaintiff and felt that he did not appear to be having true radicular symptoms. Because the myelogram/CT scan showed no evidence of stenosis or disc herniation, Dr. Knapp recommended plaintiff increase his activities as tolerated. On December 31, 2002, Dr. McCloskey released plaintiff to return to work with the restriction of no lifting more than 30 pounds, which had been a permanent restriction since plaintiff was released from his original back operation.
7. Defendant admitted liability for benefits under the Workers' Compensation Act for the April 29, 2002 injury by accident and paid compensation to plaintiff for temporary total disability while he was out of work. According to the Form 28T submitted by defendants, plaintiff returned to work in his regular job on December 31, 2002. Plaintiff received no further medical treatment for his low back condition until August 26, 2003, when he reported to Melissa Carlton, the nurse practitioner at the family practice where he received his general medical care, that he had long-standing chronic back pain. Ms. Carlton prescribed medication for plaintiff. On September 24, 2003, plaintiff returned to Ms. Carlton with complaints of soreness in his back from overuse at work. Ms. Carlton administered a trigger point injection and referred plaintiff back to Dr. McCloskey.
8. Plaintiff did not go back to Dr. McCloskey at that time. Rather, on December 11, 2003, he went to Dr. Ralph Maxy, an orthopedic spine surgeon, and reported that he had low back pain radiating to his left leg since the accident at work where the wall unit fell on him. On examination, there were some signs of neural impingement, so Dr. Maxy ordered an MRI, which showed a small disc protrusion at L3 and some spondylolisthesis at L5-S1.
9. During this time, plaintiff continued working as a master finish repairman. This job involved making repairs to completely assembled tables or cases and replacing parts that could not be fixed. Most of the repairs could be performed while the furniture was on a conveyor, but occasionally a piece of furniture required extensive repairs and plaintiff would have to take it off the conveyor to do the necessary work.
10. On January 8, 2004, plaintiff's back began to bother him as he was pushing and pulling cases on the conveyor. Plaintiff had to move a case off the conveyor in order to repair it, and while moving the case, plaintiff developed severe pain and a feeling that he did not have control over his legs. Plaintiff was unable to move and called out for assistance to his supervisor, Mike Curtis, who came over to check on him. Mr. Curtis called the first aid office to tell Tracy Melton what happened. Mr. Curtis then helped plaintiff into a rolling chair and pushed him to the first aid department. Plaintiff was in such pain that he could not answer questions or sign any form prepared by Ms. Melton, so his wife was called to take him to the hospital. At the emergency room, plaintiff was given medication and advised to stay out of work for a few days. However, employment records indicated that he only missed the rest of the shift on January 8, 2004 and returned for his next scheduled work shift.
11. Plaintiff saw Dr. Maxy two weeks later, but failed to tell him about the incident on January 8, 2004 because he considered the event to be another flare up of symptoms from performing his regular work activities. Dr. Maxy reviewed the MRI findings and concluded that there was no evidence of nerve root impingement. Dr. Maxy did not recommend surgery, but he did recommend pain management for plaintiff. However, there was no evidence that plaintiff followed-up with the recommendation. On February 14, 2004, plaintiff went back to Dr. McCloskey, whom he had not seen in over a year. Dr. McCloskey understood from what plaintiff said that Dr. Maxy had recommended surgery, so Dr. McCloskey considered and discussed possible surgical options, including an instrumented fusion, but advised plaintiff that he would not perform surgery unless plaintiff quit smoking for at least one month. Plaintiff returned to Dr. McCloskey on April 12, 2004 with worsened back pain. Dr. McCloskey took plaintiff out of work and ordered diagnostic tests.
12. On May 6, 2004 while he was out of work, plaintiff was involved in another motor vehicle accident when his vehicle was rear-ended. As a result of the accident, plaintiff experienced neck and back pain and was taken to the hospital. On May 7, 2004, plaintiff went to his family medical practice, where he was prescribed medication. On June 10, 2004, plaintiff saw his family doctor and complained of severe pain that kept him from sleeping. Dr. Moore prescribed medication for plaintiff until he could see Dr. Maxy.
13. On July 1, 2004, Dr. Maxy examined plaintiff and concentrated on treating plaintiff's primary symptoms in his neck and right arm. After that appointment, plaintiff saw Dr. Lafavore once more for a possible epidural steroid injection for his lumbar spine. Plaintiff declined the injection since the previous one had not helped him.
14. On September 10, 2004, Dr. Maxy performed surgery to plaintiff's cervical spine, which Dr. Maxy testified was related to plaintiff's motor vehicle accident. On November 11, 2004, plaintiff again complained of low back and leg pain, but still did not want more epidural steroid injections. Since there was a possibility that there was a non-union of the fusion plaintiff underwent in 1988, Dr. Maxy offered to surgically explore the area and possibly perform another fusion procedure. On December 17, 2004, Dr. Maxy performed the surgery and found the prior fusion was solid and that there was no evidence of a ruptured disc or other source of nerve root compression. Dr. Maxy closed up the surgical site without performing any further procedures. Dr. Maxy found no structural problem during the operation that explained plaintiff's complaints. On January 20, 2005, plaintiff continued to complain of severe low back pain.
15. Defendant denied any liability for the incident of January 8, 2004, since plaintiff did not report it as an injury. However, defendant-employer was immediately made aware of the incident and Ms. Melton wrote an incident report that day. The fact that plaintiff did not call it an injury did not relieve defendant from investigating the matter, since employees can be under the impression that an accident has to occur before there is a qualifying injury. Plaintiff's severe back pain occurred at a cognizable time while he was moving the case. Consequently, the Commission finds that plaintiff sustained a back injury as a result of a specific traumatic incident of the work assigned on January 8, 2004 when he moved a case off the conveyor and developed severe pain.
16. Plaintiff required treatment at the emergency room after the specific traumatic incident on January 8, 2004; however, he did not miss as many as seven days of work due to the injury.
17. Plaintiff had long-standing low back problems and underwent evaluation by Dr. Maxy approximately one month before the incident on January 8, 2004. Although plaintiff claimed that the low back symptoms for which he was treated after January 8, 2004 were causally related to the specific traumatic incident occurring on that date, Dr. Maxy was unable to state that there was a probable causal relationship between that incident and the conditions for which he subsequently treated plaintiff. Dr. Maxy testified that he could not give an opinion to a reasonable degree of medical certainty that plaintiff's low back problems were related to the January 8, 2004 incident. Further, Dr. Maxy could not state to a reasonable degree of medical certainty that the condition for which he treated plaintiff was related to plaintiff's April 29, 2002 injury. Plaintiff presented no other expert medical evidence addressing the causation issue.
18. The Commission finds that plaintiff did not establish a causal relationship between the low back condition for which he was treated and the April 29, 2002 injury or the January 8, 2004 specific traumatic incident. The only injury that Dr. Maxy related to the low back condition was the original injury on August 31, 1987, which led to the fusion surgery, but that claim is not before the Full Commission.
19. Plaintiff has not alleged that he sustained any permanent partial disability as a result of the April 29, 2002 injury by accident.
20. Defendant has raised notice as a defense to the January 8, 2004 claim because plaintiff did not file a Form 18 until April 2004 and because the Form 18 showed an incorrect date of injury of December 8, 2003. However, defendant had actual knowledge of the injury on the date it occurred since a written report was completed in the first aid department on January 8, 2004. Plaintiff did not consider the incident to be an accident and therefore had a reasonable excuse for delaying filing a Form 18 until he sought legal counsel. It appears the Form 18 was completed before the incident report and the emergency report were obtained by plaintiff's attorney. As a result, defendant was not prejudiced by the delay in receiving written notice, since defendant-employer was aware of and helped arrange for the only medical treatment plaintiff received for the injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 8, 2004, plaintiff sustained an injury by accident to his back arising out of and in the course of his employment in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff's claim is not barred by his failure to give written notice of his injury to his employer within 30 days. Defendant had actual knowledge of the injury and was not prejudiced by the delay in receiving written notice. N.C. Gen. Stat. § 97-22.
3. Since plaintiff was disabled for less than the seven-day waiting period, he is not entitled to compensation for temporary total disability for the January 8, 2004 injury. N.C. Gen. Stat. § 97-28.
4. Plaintiff is entitled to have defendant pay for the medical treatment he received at the hospital on January 8, 2004, for the back injury that occurred that day. N.C. Gen. Stat. §§ 97-2 (19);97-25.
5. Since the back conditions for which he was treated after January 8, 2004 were not proven to have been a proximate result of the injury on that date, plaintiff is not entitled to further benefits under the Workers' Compensation Act for that injury. N.C. Gen. Stat. § 97-2 et seq.; Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003), Click v. Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980).
6. Plaintiff is not entitled to additional compensation for temporary total disability due to his April 29, 2002 injury by accident since he did not prove that the back conditions in 2004, which led to his disability, were causally related to that injury. N.C. Gen. Stat. § 97-29; Click v. Freight Carriers,supra.
7. Plaintiff is entitled to have defendant provide all medical compensation arising from his April 29, 2002 injury by accident. However, plaintiff did not prove that the treatment rendered beginning August 2003 was for conditions causally related to the April 29, 2002 injury. Thus, plaintiff is not entitled to have defendant provide the medical treatment provided on and after August 26, 2003. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for the medical treatment at the hospital on January 8, 2004, incurred by plaintiff as a result of the specific traumatic incident on January 8, 2004.
2. Plaintiff's claim for further workers' compensation benefits for the January 8, 2004 incident is DENIED.
3. Plaintiff's claim for additional temporary total disability compensation and medical compensation for the April 29, 2002 injury is DENIED.
4. Defendant shall pay the costs for I.C. No. 418313.
5. Each side shall pay its own costs for I.C. No. 264253.
This 24 day of March 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER